NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Criminal No. 06-157 (AET) |
| | : | |
| v. | : | |
| | : | |
| ROBERT PEPPI | : | LETTER OPINION AND ORDER |

**BONGIOVANNI, Magistrate Judge**

This matter comes before the Court upon oral petition by Assistant United States Attorney John Hoffman, Esq., for the United States Attorney's Office (hereinafter "the Government") seeking to impose bail conditions on Defendant Robert Peppi prior to his release from the custody of the Attorney General of the United States. Defendant objects, contending that Mr. Peppi's release must be immediate and unconditional.

**Factual Background**

To this day, Robert Allen Peppi remains ensnared by an acute psychotic mental illness that renders him helpless against his own physiology. He first began exhibiting symptoms of a severe psychotic disorder in the early 1990s, and over the span of nearly two decades, Mr. Peppi has been hospitalized over 30 times in no fewer than eight community facilities. (November 27, 2006 Forensic Psychological Report of the U.S. Medical Center for Federal Prisoners in Springfield, Missouri at 2 (hereinafter "Springfield Report")). His symptoms have included hallucinations, delusional beliefs, and disorganized thoughts and speech, and he suffers from mood swings, depression, and anxiety. (Id.) He has been diagnosed with a variety of psychotic disorders, including paranoid schizophrenia, bipolar schizoaffective disorder, and manic bipolar disorder with psychotic features. (Id.) While in the grasp of his debilitating illness, Mr. Peppi has been arrested multiple times for threatening the

President of the United States. (Springfield Report at 3).

    Mr. Peppi is no stranger to this Court. On July 25, 2003, he was charged with Threatening the President and law enforcement officers in violation of 18 U.S.C. §§ 871, 115(a) and 115(b). [Criminal Docket for Case No. 03-cr-5032, Entry No. 1]. This Court ordered that a competency evaluation be conducted and Mr. Peppi was transferred to the Metropolitan Correctional Center in New York for the evaluation.(Id. at Entry No. 9). That forensic evaluation deemed him incompetent to defend himself against the allegations, and he was subsequently remanded to the Federal Medical Center at Butner for competency restoration treatment. (Springfield Report at 3). The treatment failed, and the Butner clinicians opined after a risk assessment that Mr. Peppi "represented a low potential for imminent risk." (Id.) On May 3, 2004, this Court ordered that Mr. Peppi remain committed to the custody of the Attorney General for an additional reasonable period of time in accordance with 18 U.S.C. § 4241(d)(2)(b) until the charges against him were disposed of according to law. (May 3, 2004 Order as to Robert Peppi, Criminal Docket No. 03-cr-5032). On October 14, 2004, the Government dismissed the complaint against Mr. Peppi, finding that he was "suffering from a mental disease or defect rendering him incompetent," that there did not exist a "substantial probability that the defendant [would] attain the capacity to permit the trial to proceed," and that "the defendant's unconditional release [did] not pose a substantial risk of bodily injury to another person or serious damage to the property of another...." (October 14, 2004 Order for Dismissal as to Robert Peppi in Criminal Docket No. 03-cr-5032). Mr. Peppi was unconditionally released to the custody of his mother. (Id.)

    In July of 2005, Mr. Peppi was committed to Trenton Psychiatric Hospital (hereinafter "TPH"). (April 12, 2006 Forensic Report of the Federal Detention Center in Miami, Florida at 6

(hereinafter the "Miami Report")). Though the details of that involuntary commitment are somewhat murky, it appears that Mr. Peppi was committed based on some incident in Wall Township, New Jersey. It further appears that in November 2005 and from a telephone within TPH, Mr. Peppi made numerous telephone calls, including calls to the White House and to the Trenton Police Department. (Springfield Report at 3). He apparently called a Verizon telephone operator and made threats to the President. (Id.) The Secret Service was notified, and its agents interviewed Mr. Peppi (presumably within the walls of TPH). (Id.) The Secret Service agents reported that during this interview, Mr. Peppi made additional threats to them. (Id.)

On January 5, 2006, a Criminal Complaint was filed against Mr. Peppi by the Government asserting three counts of threatening the President of the United States, in violation of 18 U.S.C. § 871. (January 5, 2006 Complaint as to Robert Peppi at 2 (hereinafter "Complaint")). On January 10, 2007, Mr. Peppi was arrested on these charges at TPH and transferred into Federal custody. [Docket Entry No. 2]. On that date, this Court ordered that a competency hearing be conducted in accordance with 18 U.S.C. §§ 4241(c) and 4247(d), as the Court found that Mr. Peppi may be suffering from a mental disease or defect "rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense." (January 11, 2006 Order of Detention as to Robert Peppi [Docket Entry No. 6]). On February 22, 2006, Mr. Peppi was designated to the Federal Detention Center in Miami, Florida for a psychological examination. (Miami Report at 1).

Over the next several weeks, Mr. Peppi was examined through a battery of tests, including tests regarding his ability to understand the charges against him, his ability to assist in his own defense, and his ability to understand courtroom proceedings. (Id. at 11). Forensic Exam Coordinator

Rodolfo A. Buigas, Ph.D., concluded that Mr. Peppi's prognosis was poor, and recommended that Mr. Peppi be found incompetent to stand trial, and that he undergo mandatory competency restoration treatment. (Miami Report at 12). Mr. Peppi was subsequently transferred to the U.S. Medical Center for Federal Prisoners in Springfield, Missouri in an effort to restore competency such that this matter could proceed to trial. (Springfield Report at 1). It is during this time that a Grand Jury was assembled, and on March 2, 2006, Mr. Peppi was indicted on all three charges stemming from the Complaint. (March 2, 2006 Indictment as to Robert Peppi [Docket Entry No. 12] (hereinafter referred to as the "Indictment").

For nearly five months, Mr. Peppi was evaluated and treated at the Springfield Medical Center. (Springfield Report at 1). It was the opinion of the panel that while Mr. Peppi's mental illness precludes him from ever attaining competence, it does not place him at an increased risk for aggressive or violent behavior. (Id. at 8). Further, the panel agreed that "release from a correctional setting would not create a substantial risk of danger to others or the property of others due to his mental illness." (Id.) On January 16, 2007, a hearing was held pursuant to 18 U.S.C. § 4246, at which Richart L. DeMier, Ph.D., Clinical Psychologist at the Springfield facility, testified and confirmed the above findings. [Docket Entry No. 22]. At a follow up hearing on January 24, 2007, Mr. Peppi, through his counsel, concurred with, and the Government indicated that it did not object to, the findings of the panel. This Court adopted the findings, concluding that the release of Mr. Peppi would not create a substantial risk of bodily injury to another person, or serious damage to the property of another. [Docket Entry No. 23]. Mr. Peppi remains under indictment.

**Issue**

During the January 24, 2007 hearing, the Government indicated that its determination regarding the fate of the pending indictment against Mr. Peppi had not yet been made. As a result, it argued that Mr. Peppi could only be released subject to conditions outlined in the Bail Reform Act, codified in 18 U.S.C. § 3142. Mr. Peppi's counsel contended that Mr. Peppi's release must be unconditional, given that Mr. Peppi has been found incompetent to stand trial under 18 U.S.C. § 4241, and experts have determined that his release would not create a substantial risk of bodily injury to another person, or serious damage to the property of another, under the requirements of 18 U.S.C. § 4246. Thus, the issue is whether it is appropriate to impose bail conditions in accordance with the Bail Reform Act on a defendant who is neither competent to stand trial nor creates a substantial risk of danger to others or their property, or whether release of such an individual is mandated by 18 U.S.C. §§ 4241 and 4246. The Court concludes that the latter course of action is appropriate.

**Analysis**

Although case law directly addressing this issue is lacking, a review of statutory language and related case law guides, and common sense dictates, that Mr. Peppi should be released immediately.

*Sections 4241 and 4246*

In part pertinent to this action, 18 U.S.C. § 4241(d) mandates that if a court, after holding a hearing, finds by a preponderance of the evidence that the defendant is "presently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to

understand the nature and consequences of the proceedings against him or to assist properly in his defense, the court shall commit the defendant to the custody of the Attorney General." 18 U.S.C. § 4241(d) (2007). In turn, the Attorney General will keep the defendant in custody for a period of no longer than four months "to determine whether there is a substantial probability that in the foreseeable future he will attain the capacity to permit the proceedings to go forward...." Id. The statute continues: "If at the end of the time period specified, it is determined that the defendant's mental condition has not so improved as to permit proceedings to go forward, the defendant is subject to the provisions of section[] 4246...." Id.

Section 4246, entitled "Hospitalization of a person due for release but suffering from mental disease or defect," addresses commitment procedures for mentally ill persons who are *due for release*. This section mandates what must occur if, after a hearing, the court finds by clear and convincing evidence that the release of the person would create a substantial risk of bodily injury to another person or serious damage to property of another, namely, commitment. 18 U.S.C. § 4246(d). It also mandates what is to occur if it is determined that the person previously committed is no longer dangerous, namely, immediate discharge or conditional release under a prescribed regimen of treatment. 18 U.S.C. § 4246(e)(1)-(2). There exists no reference to or requirement that the indictment or complaint be dismissed prior to the release of the individual.

Although § 4246 specifically addresses only those persons who were once dangerous, but no longer are, it is anomalous to suggest that the statute does not apply also to defendants who, like Mr. Peppi, never were deemed a substantial danger. To read this section otherwise would evince an absurd congressional intent to "let out" formerly dangerous defendants and "keep in" dovish ones. This Court therefore concludes that § 4246 impliedly mandates that if the release of a

6

mentally ill person does not create a substantial risk of danger to others or their property, he is to be freed from the Attorney General's custody.

On January 16, 2007, Mr. Peppi along with Clinical Psychologist Dr. Richart DeMier appeared before the Court via video-conference for a hearing pursuant to 18 U.S.C. § 4246, wherein Dr. DeMier confirmed his report findings that Mr. Peppi remains incompetent to stand trial, and that his release would not create a substantial risk of bodily injury to another person, or serious damage to the property of another.[Docket Entry No. 22]; see generally Springfield Report. On January 24, 2007, this Court adopted Dr. DeMier's report. [Docket Entry No. 23]. Thus, the two statutes, when read together, can only lead to the conclusion that Mr. Peppi be released immediately.

At the January 24, 2007 argument, the Government sought to rely on United States v. Ecker for the proposition that, because 18 U.S.C. §§ 4241 and 4246 do not "address the pendency or dismissal of an indictment of a defendant found long-term incompetent under 4241, but not found dangerous under section 4246," Congress's silence can only indicate that the medical findings have no effect on the pending indictment. 78 F.3d 726, 728 n.3 (1st Cir. 1996). Ecker, however, does not make that leap. Rather, it stands for the proposition that the statutes contain no language *requiring* dismissal of the pending indictment. "Congress, we have little doubt, intended to leave the decision about the disposition of pending charges to the case-by-case discretion of the prosecutors." Id. at 728. While this Court agrees that the prosecutors are not required by 18 U.S.C. §§ 4241 and 4246 to dismiss their indictment, it none the less concludes, using the unequivocal words of the Ecker Court itself, that "[i]f not committed [under § 4246 for dangerousness to others or their property], the defendant is released." Id. at n1. In short, the release of defendants who, like

Mr. Peppi, are incompetent to stand trial and whose release would not create a substantial risk of danger to others or their property is mandatory, and the Government is free to exercise its discretion in dismissing or proceeding with an indictment against such an individual. Because the release of a defendant and the dismissal of the indictment appear to be two disjointed events, the Government's assertion that Ecker provides grounds for imposing bail conditions on Mr. Peppi is unpersuasive.

The Court is also mindful that § 4241 allows the Attorney General to keep a defendant in custody after he is found incompetent for an additional reasonable period of time until his mental condition has so improved so that the trial may proceed, or the pending charges against him are disposed according to law. 18 U.S.C. § 4241(d)(2)(A)-(B) (2007). The statute also mandates that if, after this reasonable period of time, the defendant is not so improved as to permit the trial to proceed, the defendant is subject to the provisions of § 4246. 18 U.S.C. § 4241(d).

This is precisely what occurred in Mr. Peppi's prior federal criminal matter. On May 3, 2004, this Court ordered that Mr. Peppi remain committed for an additional reasonable period of time until the charges against him were disposed of according to law. See May 3, 2004 Order as to Robert Peppi, Criminal Docket No. 03-cr-5032. After approximately five months of additional commitment, on October 14, 2004, the Government dismissed the complaint against Mr. Peppi, finding that he was "suffering from a mental disease or defect rendering him incompetent," that there did not exist a "substantial probability that the defendant [would] attain the capacity to permit the trial to proceed," and that "the defendant's unconditional release [did] not pose a substantial risk of bodily injury to another person or serious damage to the property of another...." October 14, 2004 Order for Dismissal as to Robert Peppi in Criminal Docket No. 03-cr-5032.

In the instant matter, the Springfield Medical Center report, concluding that Mr. Peppi's release would not pose a substantial risk of danger to others or the property of others due to his mental illness, was issued on November 27, 2006. Mr. Peppi has been detained, pending a § 4246 hearing, since the report was issued. Although not detained pursuant to § 4241, in effect an additional period of time has elapsed, the matter has not been disposed of as a matter of law, and he assuredly has not regained competency. Therefore, assuming § 4241(d)(2)(B) applied, this provision too, leads to an analysis of § 4246, which in turn requires that Mr. Peppi be released.

*The Bail Reform Act*

The Court notes at the outset that the Bail Reform Act requires that a judicial officer "issue an order that, pending trial, the person be" released on recognizance or bond, released with conditions, or detained. 18 U.S.C. § 3142(a) (2007). The Court remains dubious that there even exists a "pending trial." Because Mr. Peppi cannot be brought to trial now, it seems an impermissible fiction to pretend that one is pending. If not pending trial, then the Bail Reform Act could not apply. Though the statutory analysis could easily end there, the Court will address more fully the merits of the arguments proffered.

The Government's January 24, 2007 oral petition for release of Mr. Peppi pursuant to the Bail Reform Act based on the present indictment is unavailing. Under the provisions of the Bail Reform Act, a federal defendant awaiting a pending trial is released on personal recognizance or an unsecured appearance bond, unless the court determines that "such release will not reasonably assure" the defendant's appearance, or will "endanger the safety of any other person or the community." 18 U.S.C. § 3142(b). A defendant may be detained only if there is no condition or combination of conditions of release which will reasonably assure the appearance of the defendant

as required by the court, and the safety of any other person in the community. United States v. Colon, 2003 WL 21730603 at *1 (S.D.N.Y. 2003). Such conditions may include execution of an unsecured appearance bond, prohibitions on committing any unlawful acts, and the least restrictive further conditions which would reasonably assure both the defendant's appearance and the safety of the community, including undergoing available psychiatric treatment, and agreeing to remain in a specified institution, if required for that purpose. 18 U.S.C. § 3142(b) and (c)(1) (2007); see also United States v. Colon, 2003 WL 21730603 at *1. The imposition of bail conditions, however, presupposes the defendant's ability to adhere to them; indeed, if a defendant does not agree to comply, he risks detainment.

      The Court fails to see how bail, as a practical matter, could be imposed on Mr. Peppi. His mental state clearly precludes any reasonable finding that Mr. Peppi, no matter the conditions, could form the requisite linear thought progression to appreciate and accept his bail conditions, adhere to them, then appear at the scheduled date and time at the scheduled location. Of course, the Government may seek to impose all of Mr. Peppi's bail conditions on his family, but such a request would not succeed for two reasons. First, fairness and liberty interests dictate that any bail conditions must, at least in part, apply directly to the defendant. Because of his incompetence, Mr. Peppi cannot reasonably be expected to comply with any mandates from any court. Were these requirements to rest directly and fully on the shoulders of those with the obligation and compassion to care for him, their weight would fall, too, on the conscience of this Court. Second, by imposing Mr. Peppi's bail conditions on his family, the Court would essentially create a new and arbitrary paradigm where one defendant with a family will be treated differently from an identical defendant without such support.

Furthermore, it is unclear exactly for what he would appear; it is axiomatic that trying and/or convicting an incompetent defendant is a fundamental denial of his Fifth Amendment due process rights. See, e.g., Drope v. Missouri, 420 U.S. 162, 172 (1975); see also Pate v. Robinson, 383 U.S. 375, 378 (1966). Indeed, it is not illogical to conclude that the very reason that case law on this precise issue is lacking is because the Government customarily dismisses indictments against defendants who, like Mr. Peppi, will never regain competency.

That Mr. Peppi, given his history, may once again become involved in the criminal justice system is of no moment. The Bail Reform Act is not society's prophylactic from the mentally ill. Because there can be no set of bail conditions imposed on, and no trial of, a defendant who has been found to be incompetent, this Court finds that the Bail Reform Act is inapplicable.

**Conclusion**

The Court is satisfied that Mr. Peppi is incompetent to stand trial, and that his release would not create a substantial risk or bodily injury to another person, or serious damage to the property of another. The Court is further satisfied that the Bail Reform Act to does not apply to Mr. Peppi; while the indictment is still active, he simply does not have the faculties to adhere to any condition or conditions of release, and the matter cannot be tried.

ACCORDINGLY, IT IS on this 27th day of February, 2007

ORDERED that Robert Allen Peppi be hereby RELEASED from the custody of the Attorney General of the United States.

                                              s/Tonianne J. Bongiovanni
                                              **HONORABLE TONIANNE J. BONGIOVANNI**
                                              **UNITED STATES MAGISTRATE JUDGE**